UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICHOLAS J. WRIGHT, on behalf of himself and all others similarly situated | : : : | |
| v. | : : | Civil Action No. 18-2207 |
| RISTORANTE LA BUCA, INC. d/b/a/ RISTORANTE LA BUCA, JEANIE GIULIANI, ANTHONY GIULIANI, and DOE DEFENDANTS 1-10 | : : : : | |

## <u>**MEMORANDUM OF LAW**</u>

Defendant, Ristorante La Buca, hereby opposes Plaintiff's Motion seeking conditional class certification of Plaintiff's claims. Defendant's opposition to class certification focuses primarily on one issue: the putative class is not sufficiently numerous.

Fed.R.Civ.P. 23(a)(1) requires the Plaintiff to show that "the class is so numerous that joinder of all members is impracticable." While neither the Federal Rules of Civil Procedure, nor case law, set any specific limit on how many proposed class members does or does not satisfy the numerosity requirement of Fed.R.Civ.P. 23(a)(1), the Supreme Court has held, in *dicta*, that a class of fifteen was "too small to meet the numerosity requirement." <u>Gen. Tel. Co. of the Nw, Inc.v. EEOC</u>, 446 U.S. 318, 331, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

The Third Circuit more recently addressed Rule 23's numerosity requirement in <u>In Re Modafinil Antitrust Litigation</u>, 837 F.3d 238 (2016). In discussing the numerosity requirement, which was at the heart of the litigation, the Court set forth both a history of the law on this issue and a framework for district courts to use in determining whether this requirement has been met by a Plaintiff seeking class certification.

While "[n]o minimum number of plaintiffs is required to maintain a suit as a class action," our Court has said that "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cri. 2001); *see also* Robidoux, 987 F.2d at 936 ([T]he difficulty in joining as few as 40 putative class members should raise a presumption that joinder is impracticable." . . . Leading treatises have collected cases and recognized the general rule that "[a] class of 20 or fewer is usually insufficiently numerous . . . [a] class of 41 or more is usually sufficiently numerous . . . [while] [c]lasses with between 21 and 40 members are given varying treatment. These midsized classes may or may not meet the numerosity requirement depending on the circumstances of each particular case." 5 James Wm. Moore, et al., Moore's Federal Practice §23.22; *see also* 5 William B. Rubenstein, Newburg on Class Actions §3:12 ("As a general guideline . . . a class that encompasses fewer than 20 members will likely not be certified absent other indications of impracticability of joinder based on numbers alone." (internal footnotes omitted)); Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (3d Cir. 1986)(*citing* Moore favorably).

In Re Modafinil, at 249-50. The Modafinil Court went even further in its Opinion, stating "[a]lthough district courts are always under an obligation to ensure that joinder is impracticable, their inquiry into impracticability should be particularly rigorous when the putative class consists of fewer than forty members." Id. at 250 (*emphasis added*). Here, the record indicates the maximum potential number of class members is twenty-two, and may actually be less.

La Buca's corporate designee, and individual defendant, Anthony Giuliani, was deposed by Plaintiff's counsel and shown a document. (Defendant's Appendix 0271a). He was questioned as follows:

> Q.    This is Exhibit 8. I can represent to you that that is a list of employees of La Buca that we compiled from the payroll records you provided to us.
>
> A.    Okay.
>
> Q.    I would like you to look at that list, and if you can confirm to me that all of the individuals on that list were employees of La Buca over the past three years. Is that something you can do?
>
> A.    Sure. I recognize all of these names.

(Appendix 0192a, Lines 12-22 ).  Further, the witness is asked:

> Q.      Can you do me a favor, and count the number of individuals that you have identified as tip employees on the list you're looking at, Exhibit 8?
>
> A.      I count 22 tipped employees.

(Appendix 0194a, Lines 3-7).  Exhibit 8 details a list of La Buca's employees for the prior three years.  The Exhibit lists their names, dates of hire and termination (if no longer employed) and their method of pay.  Of particular importance is the method of pay since Plaintiff's case is based primarily on the claim that a "Tipped Employee" being paid a flat shift pay violates both the FLSA and Pennsylvania Minimum Wage law.  Counting all the employees listed in Exhibit 8 who were paid a flat shift reveals a total of 20 potential class members.  The Third Circuit's mandate in In Re Modafinil therefore requires that this Court"s inquiry into impracticability of joinder be "particularly rigorous."  Id.

Further diminishing Plaintiff's inability to satisfy Rule 23's numerosity requirement is not only the fatally small number of potential class members, but the *de minimis* value of many of these claims due to many of the potential class members' brief employment at La Buca.

In reviewing Exhibit 8, particularly in analyzing dates of hire and termination, the potential class members' time spent working at La Buca, in descending order of length of service (assuming a three year statute of limitations under Pennsylvania's Minimum Wage law, and looking backwards as of the date of this filing) is as follows:

| EMPLOYEE | DATE OF HIRE | DATE OF TERMINATION | LENGTH OF EMPLOYMENT |
|---|---|---|---|
| Thomas Daly | Prior to October 2015 | Currently employed | 3 years |
| Lido Giuliani | Prior to October 2015 | 12/11/17 | 2 years, 2 months |
| Derek Leap | Prior to October 2015 | 12/27/17 | 2 years 2 months |
| Jesus Dutan | 9/12/16 | Currently employed | 2 years, 1 month |
| Alfred Capocci | 3/26/17 | Currently employed | 1 year, 7 months |
| Irene Ventura | 7/9/17 | Currently employed | 1 year, 3 months |
| Larina Lare | 10/14/17 | Currently employed | 1 year |
| Alexander Cowan | 6/13/16 | 5/26/17 | 11 months |
| Michael Thurling | Prior to October 2015 | 6/4/16 | 8 months |
| Terence Long | 6/28/17 | 2/21/18 | 8 months |
| Abderzak Ghazaz | Prior to October 2015 | 5/26/16 | 7 months |
| Cheryl Ipri | 10/1/17 | 4/5/18 | 6 months |
| Jeffrey Clauso | 5/16/18 | Currently employed | 5 months |
| Adnan Pranvoku | 5/16/18 | Currently employed | 5 months |
| Sean Hendry | 9/23/17 | 1/15/18 | 4 months |
| Matthew Rajczk | 10/21/17 | 1/2/18 | 2 ½ months |
| Paul Massimiano | 2/17/18 | 5/1/18 | 2 ½ months |
| Lisan Butkas | 8/19/17 | 9/15/17 | 3 ½ weeks |
| Nicholas Wright - * | 4/23/18 | 5/11/18 | 3 weeks |
| Eleanor Leeman | 4/4/17 | 4/15/17 | 11 days |

•      - denotes the Plaintiff

Of the 20 potential class members, only 6 (30%) worked for more than one year during the applicable three year window.  The remaining putative class members all were, or have been, employed for less than one year.  9 of the putative class members (almost half) were or have been employed for six months or less.  The Plaintiff himself had the second shortest length of employment, a mere three weeks, second only to a bartender who was employed for only eleven days.[1]  In his motion, Plaintiff has not identified any factual basis as to why joinder of these

---

[1] It should be noted that La Buca's corporate designee, when deposed, candidly testified that after the filing of this litigation, La Buca changed its compensation policy.  La Buca now pays its Tipped Employees $2.83 per hour plus tips.  (Appendix 0145a-46a).  La Buca also began keeping records of employee hours by time clock, (Appendix 0156a) and also published Fact Sheet #15 in the kitchen, all in response to this litigation.  (Appendix 0184a).  This is to emphasize that any failure to comply with the FLSA and Pennsylvania Minimum Wage law ceased shortly after this action was filed.

potential class members would be impracticable.  This is contrary to the <u>In Re Modafinil</u> Court's Opinion where it held "[t]he burden is on Plaintiffs to show why joinder is *im*practicable."  <u>Id.</u> at 259, *quoting* <u>Marcus v. BMW of N.A., LLC</u>, 687 F.3d 583, 591 (2012).

The factors the <u>In Re Modafinil</u> Court cited as necessary for a district court to consider in determining whether joinder is impracticable were: ". . . judicial economy, the claimants' ability and motivation to litigate as joined plaintiffs, the financial resources of class members, the geographic dispersion of class members, the ability to identify future claimants, and whether the claims are for injunctive relief or for damages."  <u>Id.</u> at 253.  When analyzing each of the aforementioned factors and applying them to the facts of record in this case, none of them weigh in favor of class certification.

Beginning with the final two factors: the ability to identify future claimants and whether the claims are for injunctive relief or for damages, neither of these factors favor class certification.  The potential class members, current and former employees of La Buca, are known and identified through La Buca's payroll records.  Their number is finite and known, and there is no possibility on this record of any other potential class member who has not been identified from these records.  Likewise, as previously stated, La Buca has changed its record keeping and payment practices shortly after the initiation of this lawsuit to fully comply with the FLSA and Pennsylvania Minimum Wage law, so there is no claim for injunctive relief.  Clearly, Plaintiff is seeking monetary damages only.

Yet another factor weighing against class certification is the failure of Plaintiff to allege any geographic dispersion of class members which would make joinder impracticable.  Unlike many of the proposed class action suits which involve regional, national and even international commerce, this action is focused on a small, local restaurant operating in Philadelphia.  The

putative class members are individuals who must be present on location for work. By definition, the class members must be local to a sufficient extent that they are able to be physically present at La Buca on a daily basis to perform their duties. This factor also weighs against certification.

Two of the remaining three factors to be considered are the claimants' ability to litigate as joined plaintiffs, and the financial resources of the class members. Quite simply, Plaintiff, <u>who has the burden to satisfy</u> the Court's impracticability inquiry, has produced no evidence of record to support a claim that either of these factors in this case weigh towards class certification. In his Memorandum, Plaintiff baldly states:

> . . . if this Court required joinder of all such individuals, the litigation of this case would become unwieldy, onerous and impracticable. Common sense dictates that transient workers who earn their living from tips simply do not have the financial resources to litigate these claims independently. Finally, it is generally accepted that current employees are reluctant to sue their present employer for fear of facing repercussions. This counsels that many members of the putative class would not be motivated to litigate as joined plaintiffs.

(Plaintiff's Memorandum of Law in Support of Class Certification, page 24). It is respectfully submitted that these assertions are completely unsupported by any evidence of record. In fact, the allegation that the class members are "transient workers" is completely contradicted by the one putative class member who did testify of record: the Plaintiff. When deposed, Mr. Wright claimed that he was hired on April 23, 2018, worked for at least one week, and was never paid at all. His testimony was as follows:

> Q.    I just want to make sure I'm clear. Your testimony is that you walked into La Buca the first time with your resume on Monday, April 23?
>
> A.    Correct.
>
> Q.    You had a conversation with Jean?
>
> A.    Correct.

Q.      You were immediately hired and you began the next day>

A.      Correct.

Q.      You worked a number of days that week, you're not sure how much?

A.      Correct.

Q.      But you definitely worked more than one?

A.      Correct.

Q.      You were not paid at all that week, meaning you didn't - -

A.      I did not receive a check at the end of the week.  I did not.

Q.      Fair enough.  Okay.  Did you receive cash from anyone for any time working the
        week of April the 23rd?

Mr. Connolly: Objection.  You may answer

The Witness:  I did not.

Q.      So if you did not receive any cash, you didn't receive a check, you didn't get paid
        at all?

A.      Correct.

Q.      And despite that, despite your experience, despite your knowledge of the law and
        the requirements, you continued to go back?

Mr. Connolly: Objection.

Q.      Right?

Mr. Connolly: Objection.  You may answer.

The Witness:  **Correct.  My fiancee was making a lot of money.  When it comes down
              to it, she taking care of the bills.  I just wanted something to do that
              was going to be productive**.

(Appendix 0099a - 0101a)  The Plaintiff, who testified he had extensive experience in the

restaurant business, claimed he worked an entire week <u>without</u> <u>getting</u> <u>paid</u>.  And when

confronted about why he would continue to work after being unpaid for an entire week's work, he claimed he was comfortable due to the largesse of his fiancee.  Whatever conclusion can be made as a result of the Plaintiff's testimony, referring to the Plaintiff as a "transient worker" is not one of them.  Like the other assertions referred to in Plaintiff's Memorandum of Law, this one is completely unsupported by any evidence of record.

The final factor the Third Circuit requires to be considered is judicial economy.  Unlike the other factors mentioned, judicial economy is one which has no practical opposite.  Judicial economy, by definition, is always a preferred goal, and conducting litigation in a manner which is not economical or efficient to the Court can never be advantageous.  However, while it can be never be argued that the more claims that can be handled justly in a shorter amount of time is an unworthy goal, judicial economy alone cannot be the basis for avoiding the necessary requirements of Rule 23.  Indeed, as lofty a goal as is judicial economy, it is nonetheless not a factor set forth in Rule 23 and it would be inappropriate to consider a judicially created factor as more important that the statutory demands of the Federal Rules of Civil Procedure.

These are the dictates of Rule 23 along with binding case law of this Circuit.  The Plaintiff, by bringing this action, has the burden of proving by competent evidence that this matter is appropriate for class certification.  Even at this stage seeking conditional class certification, Plaintiff has failed to satisfy the numerosity requirement of Fed.R.Civ.P. 23 for all the reasons set forth.  This Honorable Court must therefore deny Plaintiff's request for conditional class certification.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NICHOLAS J. WRIGHT, on behalf of himself    :
and all others similarly situated    :
   :
     v.    :      Civil Action No. 18-2207
   :
RISTORANTE LA BUCA, INC. d/b/a/    :
RISTORANTE LA BUCA, JEANIE GIULIANI,    :
RICHARD GIULIANI, and DOE DEFENDANTS    :
1-10    :
   :

## **CERTIFICATE OF SERVICE**

     I hereby certify that I am serving the attached document on the Plaintiff, Nicholas J. Wright, via electronic filing as follows:

         Arkady Eric Rayz, Esquire
         1051 County Line Road, Suite A
         Huntingdon Valley, PA 19006
         Attorney for Plaintiff

         Gerald D. Wells, Esquire
         2200 Renaissance Blvd. - Suite 275
         King of Prussia, PA 19406
         Attorney for Plaintiff

             Respectfully submitted,

DATED:    October 17, 2018        /s/ RICHARD J. GIULIANI
                              RICHARD J. GIULIANI, ESQUIRE
                              Attorney for Defendants