**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| **NICHOLAS J. WRIGHT** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 18-2207** |
| | : | |
| **RISTORANTE LA BUCA INC., *et al*** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                   **October 22, 2018**

Regardless of their management style or how long they have been serving customers, restaurants must comply with the Fair Labor Standards Act and Pennsylvania Law in disclosing how they credit tips towards the hourly wage while ensuring they pay the minimum wage to waiters and other hourly workers. When the restaurant undisputedly fails to do so, it is liable to its waiters and other workers paid by tips for up to two years of lost wages as a matter of law. But federal law allows the waiters and other workers to recover for up to three years of unpaid wages if they can show the restaurant willfully violated the Fair Labor Standards Act. The restaurant's willfulness to violate the Fair Labor Standards Act requires a close examination of its awareness of federal law and resultant conduct. General awareness of the Fair Labor Standards Act alone is not sufficient to find the restaurant willfully violate federal law. When, as today, the evidence is unclear and disputed as to the restaurant's willfulness, we cannot enter summary judgment against the restaurant for up to three years of unpaid wages. The jury must decide the restaurant's willfulness as well as damages.

# I.    Undisputed facts[1]

Ristorante La Buca Inc. (La Buca) operates "Ristorante La Buca" in Philadelphia.[2] Jeanie and Anthony Giuliani manage Ristorante La Buca and decide how much to pay its employees.[3] La Buca reports annual gross sales over $500,000.[4] From May 2015 to about August 2018, La Buca employed twenty-two waiters, food runners, bussers, and bartenders as "tipped employees."[5] La Buca paid tipped employees a flat rate "shift pay" and allowed them to keep tips they earned as part of a "tip pool."[6] Under the tip pool, waiters, bussers, and food runners pooled their tips and split them equally.[7] La Buca did not include bartenders in the tip pool.[8] La Buca paid waiters, food runners, and bussers $12.00 per shift, and bartenders $14.00 per shift.[9] La Buca paid all tipped employees double their flat rate on Saturdays.[10]

Tipped employees worked separate shifts for lunch and dinner.[11] La Buca served lunch from 11:30 AM to 3:00 PM and dinner from 4:30 PM to 10:00 PM.[12] Tipped employees arrived around 11:00 AM for the lunch shift[13] and around 4:00 PM for the dinner shift[14] to perform "set up work" and prepare the dining room for customers.[15] Tipped employees had to perform prep work before customers came in.[16] Employees did not clock in when they arrived.[17]

At the end of their shifts, tipped employees performed "breakdown work" and cleaned the restaurant.[18] Tipped employees could not perform "breakdown work" until all customers had left the restaurant.[19] Mr. Giuliani swore if customers left after 10:00 PM, employees performed breakdown work after all customers had left.[20] La Buca had no written policies or procedures for breakdown work.[21] La Buca asserts "to the extent any Tipped Employee performed any 'set-up' or 'break-down' work as part of their duties, such work is common, industry standard, and was insignificant so that separate, hourly pay for this work was not required under the FLSA."[22]

2

Tipped employees worked approximately four to five hours during the dinner shift, but Mr. Giuliani testified tipped employees rarely worked only four hours, especially during holidays.[23] During holidays, tipped employees could work eight to nine hours during the dinner shift.[24] At times, tipped employees worked both the lunch and dinner shifts in a single day, resulting in a ten-hour workday.[25]

Ms. Giuliani hired Nicholas Wright as a waiter at La Buca and he began working the next day.[26] Ms. Giuliani told him "there's a minimum wage that we pay you, and then you'll get tips and you're part of a tip pool."[27] Mr. Wright understood "tip pool" to mean employees shared their tips.[28] La Buca paid him the flat rate of $12.00 per shift and $24.00 per shift on Saturdays.[29] Mr. Wright worked lunch and dinner shifts. He arrived at 4:00 PM for dinner shifts.[30]

Mr. Wright produced his payroll earning statement for May 6 to 12, 2018.[31] Mr. Wright's "rate" on the statement is $12.00, and the "hours/units" worked is four.[32] Mr. Giuliani, La Buca's corporate designee, testified the "hours/units" section represented the "number of shifts worked by Mr. Wright during the pay period."[33] La Buca did not keep written or formal records to track Mr. Wright's hours, relying instead on memory.[34] La Buca does not record the cash tips employees receive.[35] La Buca kept no records regarding the length of the employees' shifts until Mr. Wright sued it.[36]

Mr. Wright performed prep work such as polishing glassware when he arrived for his shifts.[37] At the end of his shifts, Mr. Wright performed breakdown work such as vacuuming and cleaning the restaurant.[38]

Mr. Giuliani swore when La Buca hired tipped employees, it told them "they are being paid a shift pay and they retain one hundred percent of their tips."[39] He explained La Buca provided no other information to tipped employees regarding compensation.[40] Mr. Giuliani is not

3

familiar with the term "tip credit" as used in the Act and does not know "the maximum amount that an employer can claim as a tip credit" under the Act.[41] He also testified he was "[n]ot really" familiar with the FLSA and the Pennsylvania Minimum Wage Act before the lawsuit.[42]

Before August 2018, La Buca did not track the number of hours each tipped employee worked and maintained no policies or procedures for tracking hours worked.[43] Mr. Giuliani swore La Buca "did not record the number of hours tipped employees worked during any given shift or any given week" before this lawsuit in August 2018. [44] Mr. Giuliani further swore La Buca kept "no written records" nor "any formal records of any kind" regarding tipped employees' hours before August 2018.[45] Mr. Giuliani testified he prepared the payroll at the end of the week and totaled tipped employees' shifts "from memory."[46]

Ms. Giuliani terminated Mr. Wright on May 15, 2018.[47] Mr. Wright sued La Buca ten days later.[48] Mr. Wright sues La Buca, Jeanie Giuliani, and Anthony Giuliani for minimum wage violations under the Act, minimum wage violations under the Pennsylvania Minimum Wage Act, and violations of the Pennsylvania Wage Payment Collection Law.[49]

Four months into this lawsuit, La Buca stopped paying a flat shift rate and began paying tipped employees $2.83 per hour plus tips and posted "something similar" to Fact Sheet #15 in La Buca's kitchen.[50] Before August 2018, La Buca had no policy for posting and maintaining the generic wage posters describing the Act.[51] Mr. Giuliani could not testify to the information on the poster.[52]

## II.  Analysis[53]

Mr. Wright moves for summary judgment on liability based on La Buca's undisputed failure to pay minimum wage under the Act and Pennsylvania's minimum wage law.[54]  Mr. Wright argues: (1) La Buca failed to pay Mr. Wright the minimum wage under the Fair Labor

4

Standards Act and the Pennsylvania Minimum Wage Act because it did not provide him with the required information to claim the "tip credit" under these statutes; (2) La Buca did not maintain adequate records as required under Section 211(c) of the Act (3) La Buca "willfully" violated the Act; and, (4) La Buca failed to pay tipped employees full minimum wage for non-tipped work in violation of Pennsylvania law.[55]    La Buca offers no response other than reminding us Mr. Wright's motion "is directed only to the corporate defendant, and not to either of the individual defendants [Mr. and Ms. Giuliani]."[56]

### a. La Buca cannot claim the "tip credit" with respect to Mr. Wright's wages because it failed to provide tipped employees with the information required by the Act.

Mr. Wright argues La Buca cannot claim the "tip credit" under Section 3(m) of the Act because it never informed him of the provisions in Section 3(m). Since La Buca cannot claim the "tip credit" and paid Mr. Wright a flat "shift pay" below minimum wage, Mr. Wright argues La Buca is liable to him for the difference between the cash wage and the minimum wage.

Congress passed the Act "to protect all covered workers from substandard wages and oppressive working hours."[57] Under the Act, employers must pay their employees at least $7.25 per hour.[58] Employers can "pay tipped employees a lower minimum wage as long as the employees earn a certain amount in tips."[59] This "tip credit" allows "employers to pay 'tipped employees' an hourly rate of $2.13 which is then supplemented by the employee's retained tips to meet the required federal minimum wage."[60] A tipped employee under the Act is "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."[61] Section 3(m) contains requirements for calculating wages for tipped employees when an employer claims a tip credit:

In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to:

(i) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996 [i.e., $2.13 per hour]; and

(ii) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in clause (i) and the wage in effect under section 206(a)(1) of this title [i.e., $7.25 per hour].

The additional amount on account of tips may not exceed the value of the tips actually received by an employee. **The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection,** and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.[62]

Employers must inform tipped employees of the provisions of Section 3(m) to receive the

tip credit. To claim the tip credit with respect to Mr. Wright's wages, La Buca "must inform [Mr.

Wright] of the statutory requirements related to the [tip credit] and allow [Mr. Wright] to keep all

tips received, with an exception made for the pooling of tips among employees who regularly

receive tips."[63] "Employers bear the burden of showing that they have satisfied these

requirements and 'if the employer cannot show that it has informed employees that tips are being

credited against their wages, then no tip credit can be taken and the employer is liable for the full

minimum-wage.'"[64]

To receive the "tip credit," the employer must inform the employee of the following

"statutory requirements:"

(1) The amount of the cash wage that is to be paid to the tipped employee by the employer ($2.13 per hour); (2) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; (3) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees

who customarily and regularly receive tips; and (4) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.[65]

Mr. Wright argues La Buca failed to inform him of the statutory requirements under Section 3(m) for the "tip credit." He testified when Ms. Giuliani hired him at La Buca, she told him only "there's a minimum wage that we pay you, and then you'll get tips and you're part of a tip pool."[66] During Mr. Giuliani's deposition, counsel showed Mr. Giuliani "Fact Sheet #15," which lists the information La Buca must provide to tipped employees to claim the tip credit.[67] When asked if "[he] or anyone at La Buca provide[d] this information to your tipped employees prior to the filing of this lawsuit," Mr. Giuliani responded "[n]o."[68] Mr. Giuliani further testified "prior to the filing of this lawsuit . . . the only information provided by La Buca with respect to tips" was "[tipped employees] are being paid a shift pay and . . . they retain one hundred percent of their tips."[69] At best, La Buca only provided tipped employees with part of the information from Section 3(m). While Ms. Giuliani told Mr. Wright he could keep his tips, she never informed him La Buca would credit his tips against his wages. She never told him the amount of cash wages La Buca would pay him. She also never told him the tip credit would not apply to "any employee who has not been informed of these requirements in [Section 3(m)]."[70] La Buca failed to notify Mr. Wright of all the required information under Section 203(m). Thus, La Buca cannot claim the tip credit. We grant Mr. Wright's motion for summary judgment on the issue La Buca failed to inform Mr. Wright of the provisions in Section 3(m) and thus cannot claim the tip credit with respect to his wages.

### b. Since La Buca cannot claim the tip credit, La Buca failed to pay Mr. Wright the minimum wage required under the Act.

Mr. Wright argues because La Buca cannot claim the tip credit, La Buca cannot credit Mr. Wright's tips against his wages.[71] Thus, La Buca failed to pay Mr. Wright the FLSA-

7

required minimum wage. La Buca paid Mr. Wright a flat shift pay of $12.00 for a 4-5 hour shift.[72] Mr. Wright offers his payroll statement showing La Buca paid him $12.00 per shift for four shifts during the week of May 6, 2018.[73] For a four-hour shift, La Buca paid him $3.00 per hour. For five hours, La Buca paid him $2.40 per hour. These rates are well below the statutorily-required minimum wage of $7.25 per hour. We grant Mr. Wright summary judgment on the issue La Buca failed to pay Mr. Wright the statutorily-required minimum wage under the FLSA. As Mr. Wright has not moved for summary judgment on the issue of damages, we make no finding on damages.

### c. La Buca violated the Act by failing to keep adequate records.

Mr. Wright argues La Buca failed to keep adequate records. Under the Act, La Buca "shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment[.]"[74] Congress included a record-keeping requirement to "ensure that all workers are paid the minimum wage for every hour worked."[75] La Buca bears the burden of keeping accurate wage and time records,[76] including "[h]ours worked each workday and total hours worked each workweek"[77] and "the daily starting and stopping time of individual employees."[78]

When asked whether La Buca "track[s] the number of shifts worked per week by tipped employees," Mr. Giuliani swore "[w]e don't write anything down. It's all kept by memory."[79] Mr. Giuliani swore La Buca did not keep written or formal records "of any kind" before August 2018.[80] Mr. Giuliani further testified "prior to August 2018 [La Buca] did not record the number of hours tipped employees worked during any given shift or any given week."[81]

The only available "record" is Mr. Wright's earning statement for the pay period May 6 to 12, 2018.[82] The statement lists the pay rate of "12.0000" and "hours/units" as "4.00."[83] Mr.

8

Giuliani swore 4.0 represents "the number of shifts worked by Mr. Wright during the pay period."[84]

La Buca did not generate this record; the payroll reporting company generated it. Even assuming La Buca keeps this record, it lacks the "hours" worked and the daily start and stop time for Mr. Wright. The earning statement only reflects the number of shifts. As the hours in a shift at La Buca varied, this entry does not accurately reflect hours worked. The statement does not reflect work performed after the shift, such as breakdown and clean-up work.[85]

We grant Mr. Wright's motion finding, as a matter of law, La Buca failed to keep adequate records as required by the Act.

### d. Issues of fact preclude summary judgment on willfulness.

Mr. Wright argues La Buca willfully violated the Act's minimum wage requirements when it failed to provide Mr. Wright the required information to qualify for the "tip credit" under Section 3(m). Mr. Wright points to La Buca's discovery responses showing La Buca was "aware of the existence of" Section 3(m) and Fact Sheet #15 from May 25, 2015 to the present. Mr. Wright ignores La Buca's sworn statements to the contrary which raise issues of fact precluding summary judgment.

An employee may bring an action under the Act "within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."[86] La Buca "willfully" violated the Act if it "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA."[87] Mere ignorance of the Act's requirements does not amount to willfulness.[88] "'If an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful . . . [i]f an employer acts unreasonably, but not recklessly, in

9

determining its legal obligation' it would not be considered to have acted willfully."[89] The Supreme Court rejected a standard of willfulness requiring only a showing the employer knew "the FLSA 'was in the picture,'" since under such standard, "it would be virtually impossible for an employer to show that he was unaware of the Act and its potential applicability."[90]

Our court of appeals explained an employer's "general awareness of the Act's requirements" does not equal willfulness.[91] In *Souryavong*, the employees worked two separate jobs. The employer failed to aggregate the employees' hours for the two separate jobs, resulting in a failure to pay overtime rates for hours beyond forty hours per pay period. The employees argued the employer willfully violated the Act because the employer's CFO and Human Resources Director both testified they were "generally aware of the FLSA and its requirements" and the employer's obligations under the Act.[92] The employees also cited an email in which the Director worried the employees "may file a grievance for back pay for overtime for being paid straight time."[93] The employees argued the email showed the employer willfully violated the Act because it was aware of the "two-job overtime problem" and failed to correct the problem.[94]

The court of appeals affirmed the district court's judgment as a matter of law in favor of the employer on the willfulness question. The court found "general awareness" insufficient. The court explained "[w]illful [Act] violations require a more specific awareness of the legal issue."[95] The employer lacked awareness of the particular legal issue: violation of the Act by failing to pay overtime.[96] The court further explained the employees could not rely on the email to show willfulness. While the email showed the employer's awareness of an overtime problem generally, it did not show an awareness its conduct violated the particular overtime requirement under the Act.[97]

10

In *Osaka*, our colleague Judge Baylson similarly found issues of fact precluded summary judgment against the employer on the issue of willfulness.[98] The Department of Labor sued Osaka Restaurant for failing to pay employees overtime.[99] The Department moved for summary judgment arguing Osaka willfully violated the Act.[100] Judge Baylson denied summary judgment, noting the "paucity" of binding case law in our circuit affirming summary judgment on willfulness.[101] Judge Baylson pointed to contradictions within the defendant's deposition creating an disputed issue of fact where the defendant initially testified he had not "truly underst[ood]" what overtime meant but later stated "he had known that overtime meant time-and-half pay for time worked over forty hours before the investigation."[102]

We face a similar lack of undisputed evidence of willfulness. Mr. Wright argues La Buca admitted in a discovery response it was "aware of the existence of Section 3(m) of the FLSA" as early as May 25, 2015.[103] La Buca also admitted in the same response it was "aware of the existence of the Department of Labor's Fact Sheet #15."[104] In his deposition, Mr. Giuliani answered questions as La Buca's corporate designee about the Act. When asked whether he was familiar with the Act, Mr. Giuliani replied "[n]ot really."[105] He testified he was not familiar with the term "tip credit" as used in the Act and he did not know "the maximum amount that an employer can claim as a tip credit under the FLSA."[106] In fact, when initially asked his understanding of the term "tip credit," Mr. Giuliani believed it related to "tips owed to the employees through credit card sales."[107] When asked whether he had seen Fact Sheet #15 before the lawsuit, Mr. Giuliani answered "[n]o."[108] Mr. Giuliani also testified he knows about minimum wage requirements "because of this lawsuit."[109]

Granting summary judgment would require we somehow reconcile La Buca's two statements. We cannot conclude as a matter of law La Buca willfully violated the Act when it

failed to provide Mr. Wright with the information required by the Act.[110] While La Buca admitted it was "aware of the existence of Section 3(m) of the FLSA" and "Fact Sheet #15" in response to discovery requests, Mr. Giuliani's testimony suggests no more than "general awareness" of the Act. General awareness, as found by our court of appeals in *Souryavong,* is insufficient to establish willfulness. Mr. Wright offers no other evidence in support of his argument.

We find no other evidence to support willfulness and in fact find significant evidence creating an issue of fact. Mr. Giuliani testified he was "[n]ot really" familiar with the Act, the term "tip credit," or Fact Sheet #15 before Mr. Wright's lawsuit. While he may have been aware of the existence of Section 3(m), his testimony reveals not being aware of Section 3(m)'s requirements, particularly the requirement La Buca provide the information in Section 3(m) to its employees. As in *Osaka*, Mr. Giuliani's testimony regarding Fact Sheet #15 contradicts La Buca's discovery response. We cannot say as a matter of law La Buca knew of the particular requirement under Section 3(m) to provide employees the information in the section, when Mr. Giuliani testified he became aware of the minimum wage requirements "because of this lawsuit." We find a genuine issue of fact on the issue of willfulness. We deny Mr. Wright summary judgment on the issue of willfulness under the Act.

### e. La Buca violated the Pennsylvania Minimum Wage Act by failing to pay Mr. Wright the statutorily-required minimum wage.

Mr. Wright argues La Buca failed to pay him the minimum wage under Pennsylvania law because it cannot claim the tip credit. The Pennsylvania General Assembly protects workers from "unreasonable and unfair wages."[111] As with the Act, the minimum wage under the PMWA is $7.25 per hour.[112] The General Assembly mandated a "tip credit" protection similar to the one provided by Congress in the Act:

12

In determining the hourly wage an employer is required to pay a tipped employe, the amount paid such employe by his or her employer shall be an amount equal to:

(i) the cash wage paid the employe which for the purposes of the determination shall be not less than the cash wage required to be paid the employe on the date immediately prior to the effective date of this subparagraph; and

(ii) an additional amount on account of the tips received by the employe which is equal to the difference between the wage specified in subparagraph (i) and the wage in effect under section 42 of this act. The additional amount on account of tips may not exceed the value of tips actually received by the employe. The previous sentence shall not apply with respect to any tipped employe unless:

(1) Such employe has been informed by the employer of the provisions of this subsection;

(2) All tips received by such employe have been retained by the employe and shall not be surrendered to the employer to be used as wages to satisfy the requirement to pay the current hourly minimum rate in effect; where the gratuity is added to the charge made by the establishment, either by the management, or by the customer, the gratuity shall become the property of the employe; except that this subsection shall not be construed to prohibit the pooling of tips among employes who customarily and regularly receive tips.[113]

"Because of the substantial parallel between the two statutes' minimum wage provisions, federal courts are directed to interpret the FLSA when analyzing claims under the PMWA."[114] We determined La Buca failed to provide Mr. Wright with the required information under Section 3(m) of the FLSA to obtain the tip credit. Because La Buca cannot claim the FLSA tip credit with respect to Mr. Wright's compensation, La Buca failed to pay Mr. Wright the statutorily-mandated minimum wage in violation of the FLSA.[115] As the PMWA's "tip credit" provision "substantially parallels" the FLSA, we find La Buca also violated the PMWA.[116] We grant summary judgment on the issue La Buca violated the PMWA by failing to pay Mr. Wright minimum wage.

### f. La Buca violated the Pennsylvania Minimum Wage Act by failing to pay Mr. Wright minimum wage for non-tipped work.

Mr. Wright argues La Buca failed to pay him minimum wage for non-tipped work. Mr. Wright did not earn tips for prep work at the beginning of his shift and breakdown work at the end of his shifts. Since La Buca still paid Mr. Wright the same flat shift pay for non-tipped work, he argues La Buca violated the PMWA for failing to pay minimum wage for non-tipped work.

Under the PMWA, "[w]hen employees perform both tipped and non-tipped work, employers must pay the full minimum wage for all hours that their employees spend performing non-tipped tasks."[117]

Since La Buca cannot claim the tip credit, it cannot credit any of Mr. Wright's tips against his wages. Thus, we can only look at the cash wages to see if La Buca paid Mr. Wright the minimum wage. For a four-hour shift, La Buca paid Mr. Wright $12.00, or $3.00 per hour. Mr. Wright performed set-up and breakdown work for which customers did not tip him.[118] When Mr. Wright performed non-tipped work beyond four hours, his hourly rate was lower than $3.00. La Buca failed to pay Mr. Wright minimum wage, regardless of whether or not Mr. Wright earned tips for the work. We grant summary judgment on the issue La Buca failed to pay Mr. Wright minimum wage for non-tipped work under the Pennsylvania Minimum Wage Act.

### III. Conclusion

We partially grant Mr. Wright's motion for summary judgment upon finding: (1) La Buca failed to pay Mr. Wright the minimum wage required under the Fair Labor Standards Act and the Pennsylvania Minimum Wage Act because it cannot claim the "tip credit" under those provisions; (2) La Buca violated the Fair Labor Standards Act by failing to keep adequate records; and, (3) La Buca violated the Pennsylvania Minimum Wage Act by failing to pay Mr. Wright minimum wage for non-tipped work. We deny Mr. Wright's motion for summary

14

judgment on the issue of La Buca's willful violation of the Fair Labor Standards Act. We enter

no judgment on Mr. Wright's Pennsylvania Wage Payment Collection Law claim, the liability of

the individual Defendants, and the issue of damages, as Mr. Wright did not move on these issues.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. Mr. Wright filed his corrected SUMF at ECF Doc. No. 31 and his corrected appendix at ECF Doc. No. 32. References to exhibits in the appendix shall be referred to by Bates number, for example, "App. 1a." Mr. Wright filed his corrected brief in support of the motion for summary judgment at ECF Doc. No. 30.

[2] SUMF ¶ 1.

[3] App. 133a, 141a.

[4] SUMF ¶ 3. The Fair Labor Standards Act (Act) applies to employees "in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). An enterprise engaged in commerce or in the production of goods for commerce is one "whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(ii).

[5] SUMF ¶ 8; App. 194a.

[6] SUMF ¶ 10.

[7] App. 172a-173a.

[8] *Id.* at 173a.

[9] SUMF ¶ 15.

[10] *Id.* at ¶ 16.

[11] App. 147a.

[12] *Id.* at 143a.

[13] *Id.* at 147a.

[14] *Id.* at 155a.

[15] *Id.* at 147a-148a.

[16] *Id.* at 164a.

[17] *Id.* at 155a.

[18] SUMF ¶ 25.

[19] *Id.* at ¶ 27.

[20] App. 161a.

[21] SUMF ¶ 29.

[22] *Id.* at ¶ 30; App. 234a.

[23] SUMF ¶ 21.

[24] *Id.* at ¶ 22.

[25] *Id.* at ¶ 23.

[26] App. 81a.

[27] *Id.* at 31a.

[28] *Id.* at 32a.

[29] SUMF ¶¶ 4-5.

[30] App. 94a.

[31] *Id.* at 236a.

[32] SUMF ¶ 32.

[33] App. 170a-171a.

[34] SUMF ¶ 11; App. 165a ("We don't write anything down. It's all kept by memory.").

[35] SUMF ¶ 14.

[36] *Id.* at ¶ 12.

[37] *Id.* at ¶ 24.

[38] SUMF ¶¶ 25, 28.

[39] *Id.* at ¶ 39; App. 182a-183a.

[40] SUMF ¶ 39; App. 183a.

[41] App. 179a, 183a.

[42] *Id.* at 141a.

[43] SUMF ¶ 31.

[44] App. 165a.

[45] *Id.* at 156a-157a.

[46] *Id.* at 166a.

[47] *Id.* at 47a, 54a.

[48] ECF Doc. No. 1.

[49] ECF Doc. 12.

[50] App. 145a-146a, 180a. Pennsylvania's minimum wage law requires employers pay tipped employees a minimum cash wage of $2.83 per hour. 34 Pa. Code § 231.101(b).

[51] SUMF ¶ 43.

[52] *Id.* at ¶ 44.

[53] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson*, 850 F.3d at 533-34 (3d Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their care for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil

Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-23).

[54] ECF Doc. No. 25 at p. 1.

[55] ECF Doc. No. 30 at p. 2.

[56] ECF Doc. No. 33 at p. 1.

[57] *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981).

[58] 29 U.S.C. § 206(a)(1)(C) ("Every employer shall pay to each of his employees who in any workweek is engaged in commerce . . . not less than . . . $7.25 an hour[.]").

[59] *Acosta v. Osaka Japan Rest., Inc.*, No. 17-1018, 2018 WL 3397337, at *6 (E.D. Pa. July 12, 2018) (quoting *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 239 (2d Cir. 2011)).

[60] *Mackereth v. Kooma, Inc.*, No. 14-04824, 2015 WL 2337273, at *7 (E.D. Pa. May 14, 2015).

[61] *Osaka*, 2018 WL 3397337, at *6 (quoting 29 U.S.C. § 203(t)).

[62] 29 U.S.C. § 203(m)(2)(A). Courts refer to this section as Section 3(m).

[63] *Rong Chen v. Century Buffet & Rest.*, No. 09-1687, 2012 WL 113539, at *5 (D.N.J. Jan. 12, 2012); *Osaka*, 2018 WL 3397337, at *6 (quoting *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994)) (explaining employer can only claim the tip credit if it "informs the tipped employee that her wage is being decreased under section 3(m)'s tip-credit provision").

[64] *Rong Chen*, 2012 WL 113539, at *5 (quoting *Chez Robert, Inc.*, 28 F.3d at 403) (granting plaintiff summary judgment where employer never notified plaintiffs of taking a tip credit).

[65] 29 C.F.R. § 531.59(b); *Acosta v. A.C.E. Rest. Grp., Inc.*, No. 15-7149, 2017 WL 2539387, at *4 (D.N.J. June 12, 2017) (explaining notice to tipped employees must satisfy the list of provisions in Section 531.59(b)).

[66] App. 31a.

[67] *Id.* at 237a-240a.

[68] *Id.* at 182a.

[69] *Id.* at 182a-183a.

[70] 29 C.F.R. § 531.59(b).

[71] *Rong Chen*, 2012 WL 113539, at \*5 (quoting *Chez Robert, Inc.*, 28 F.3d at 403) ("[I]f the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage.").

[72] SUMF ¶¶ 21, 32.

[73] App. 236a.

[74] 29 U.S.C. § 211(c).

[75] *Perez v. Am. Future Sys., Inc.*, No. 12-6171, 2015 WL 8973055, at \*14 (E.D. Pa. Dec. 16, 2015), *aff'd sub nom. Sec'y United States Dep't of Labor v. Am. Future Sys., Inc.*, 873 F.3d 420 (3d Cir. 2017).

[76] *Id.*

[77] 29 C.F.R. § 516.2(7).

[78] *Id.* § 516.6(a)(1).

[79] App. 165a.

[80] *Id.* at 156a-157a.

[81] *Id.* at 165a.

[82] *Id.* at 236a.

[83] *Id.*

[84] *Id.* at 170a-171a.

[85] SUMF ¶ 27 (Employees could not perform some breakdown work until after all the customers had left); *Id.* at ¶ 21 ("4-hr shifts do not happen often").

[86] 29 U.S.C. § 255(a).

[87] *Livers v. Nat'l Collegiate Athletic Assoc.*, No. 17-4271, 2018 WL 3609839, at \*4 (E.D. Pa. July 26, 2018) (quoting *Brock v. Richland Shoe Co.*, 799 F.2d 80, 81 (3d Cir. 1986)).

[88] *Osaka*, 2018 WL 3397337, at \*12 (denying summary judgment on willfulness under the FLSA when defendant testified he "didn't know about the legal requirements for minimum wage and overtime").

[89] *Osaka*, 2018 WL 3397337, at \*11 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 n.13 (1988)).

[90] *McLaughlin*, 486 U.S. at 132-33 (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128 (1985)).

[91] *Souryavong v. Lackawanna Cty.*, 872 F.3d 122, 126 (3d Cir. 2017).

[92] *Id.* at 124.

[93] *Id.*

[94] *Id.* at 126.

[95] *Id.*

[96] *Id.*

[97] *Id.* at 127.

[98] *Osaka*, 2018 WL 3397337, at \*13.

[99] *Id.* at \*1.

[100] *Id.* at \*13.

[101] *Id.* The only case in which our court of appeals affirmed summary judgment finding willfulness is *Martin v. Selker Bros.*, 949 F.2d 1286, 1292 (3d Cir. 1991). In *Martin*, the defendant had doubts about the legality of paying employees commissions [i.e., the Act violation] and instructed another employer to "hush [the Act violation] up."

[102] *Osaka*, 2018 WL 3397337, at \*13.

[103] App. 233a, 251a.

[104] *Id.* at 251a.

[105] *Id.* at 141a.

[106] *Id.* at 179a, 183a.

[107] *Id.* at 177a.

[108] *Id.* at 181a.

[109] *Id.* at 146a.

[110] *Osaka*, 2018 WL 3397337, at \*12 (denying summary judgment on willfulness when evidence showed ignorance of the particular Act requirement employees who work more than forty hours per week are entitled to overtime pay).

[111] 43 Pa. Stat. Ann. § 333.101.

[112] *Id.* § 333.104(a.1).

[113] *Id.* § 333.103(d).

[114] *Tong v. Henderson Kitchen Inc.*, No. 17-1073, 2018 WL 4961622, at \*3 (E.D. Pa. Oct. 12, 2018); *Razak v. Uber Techs., Inc.*, No. 16-573, 2016 WL 5874822, at \*7 (E.D. Pa. Oct. 7, 2016) ("Because the PMWA 'substantially parallels' the FLSA, federal courts are directed to interpretation of the FLSA when analyzing claims under the PMWA.").

[115] Under the Pennsylvania Minimum Wage Act, employers must pay tipped employees a minimum cash wage of $2.83. 34 Pa. Code § 231.103(b). Otherwise, employers are required to provide the same information under the Pennsylvania Minimum Wage Act as the Fair Labor Standards Act.

[116] *Calabrese v. TGI Friday's Inc.*, No. 16-0868, 2017 WL 5010030, at \*1 (E.D. Pa. Nov. 2, 2017) (granting summary judgment on "tip credit" issue under both the FLSA and the PMWA).

[117] *Zellagui v. MCD Pizza, Inc.*, 59 F. Supp. 3d 712, 715 (E.D. Pa. 2014).

[118] SUMF ¶¶ 24-25.