## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| NICHOLAS J. WRIGHT | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 18-2207 |
| | : | |
| RISTORANTE LA BUCA INC., *et al* | : | |

**KEARNEY, J.**                                                          **October 26, 2018**

### MEMORANDUM

The laws of the United States and Pennsylvania afford wage protections to tipped restaurant employees including the right to seek relief in court and require their employer pay their attorney's fees should they succeed. The federal wage protection requires the employee "opt-in" to the wage claim after notice – there is no sitting back and recovering based on others' efforts. The Pennsylvania wage protection allows an employee to file Pennsylvania wage claims in court as a representative of co-employees if he can show, among other things, joinder of so many individual but common Pennsylvania wage claims is impracticable in the same case and the judge should allow all the employees to proceed as a class seeking recovery secured by a representative employee and his lawyer.

After rigorously analyzing the facts adduced in discovery, we today grant the restaurant employee's uncontested motion for conditional certification for his co-employees to opt-into his federal law claim. But the same evidence confirms a maximum of twenty-two restaurant employees and the representative has not shown joinder of each employee's common Pennsylvania wage claims are impracticable. We today deny his motion to certify a Pennsylvania wage class of no more than twenty-two restaurant employees with unknown wage losses who already must opt-in to the federal wage claim and be represented by the same lawyer.

## I. Background

Nicholas Wright began working as a waiter at La Buca Ristorante in Philadelphia on April 23, 2018 because he wanted to do something with his time; he did not need the money because his fiancé supported him.[1] He stopped working after three weeks.[2] Mr. Wright sued La Buca two weeks after leaving his waiter job. He now sues La Buca for wages under the Fair Labor Standards Act (Act), the Pennsylvania Minimum Wage Act and the Pennsylvania Wage Payment Collection Law. We directed the parties to focus initial discovery on issues necessary for conditional certification of a collective and class and potential summary judgment on the Plaintiff's claims. After this discovery, we granted Mr. Wright's uncontested motion for summary judgment against La Buca on his claims under the Act and the Minimum Wage Act, with the exception of his claims of willfulness under the Act which remain for the jury.[3]

The undisputed facts detailed in our October 22, 2018 summary judgment opinion confirm "[f]rom May 2015 to about August 2018, La Buca employed twenty-two waiters, food runners, bussers, and bartenders as 'tipped employees.' La Buca paid tipped employees a flat rate 'shift pay' and allowed them to keep tips they earned as part of a 'tip pool.' Under the tip pool, waiters, bussers, and food runners pooled their tips and split them equally. La Buca did not include bartenders in the tip pool. La Buca paid waiters, food runners, and bussers $12.00 per shift, and bartenders $14.00 per shift. La Buca paid all tipped employees double their flat rate on Saturdays."[4] The undisputed facts also confirm "Ms. Giuliani hired Nicholas Wright as a waiter at La Buca and he began working the next day. Ms. Giuliani told him 'there's a minimum wage that we pay you, and then you'll get tips and you're part of a tip pool.' Mr. Wright understood 'tip pool' to mean employees shared their tips. La Buca paid him the flat rate of $12.00 per shift

2

and $24.00 per shift on Saturdays. Mr. Wright worked lunch and dinner shifts. He arrived at 4:00 PM for dinner shifts."[5]

Mr. Wright now seeks an Order granting a preliminary collective under the Act allowing notice to the twenty-two employees working for La Buca for the last three years before suit of their right to elect to join as claimants in his Fair Labor Standards Act claim. If the other twenty-one employees do not file individual notices of intent to join required by our approved notice, the other employees will not be able to recover under the Act.

Mr. Wright also asks we certify a class of twenty or twenty-two persons working at La Buca to allow them to participate in his Pennsylvania wage claims who would automatically participate in a class-wide recovery. Based on La Buca's documents, Mr. Wright knows the names of each member of his proposed Pennsylvania wage class. He knows seven of those members presently work for La Buca and nine members worked there for six months or less.[6] He does not know where they presently live but assumes at least the seven present employees live near La Buca. Mr. Wright offers no information on the range of lost wages. He offers no information on their interest in proceeding on Pennsylvania state law claims, although they have the right to opt-in to the collective under the Act under today's accompanying Order.

## II.  We conditionally certify an uncontested collective class under federal law.

Mr. Wright moves to certify a collective of all tipped persons employed by La Buca from May 25, 2015 to the present who submit a "consent to sue" form under Section 216(b) of the Act. La Buca and its agents do not contest Mr. Wright's motion for a collective action.

The Act allows Mr. Wright to bring a representative action for himself and other employees under 29 U.S.C. § 216(b) if (1) the employees are all similarly situated; and, (2) each class member individually consents in a filing with the court to join the action.[7] Our Court of

3

Appeals directs a two-tier approach in certifying a collective class.[8] In the first tier we require a "modest factual showing," where Mr. Wright "must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected [him] and the manner in which it affected other employees."[9] We apply a lenient standard because "conditional certification is not really a certification, but is rather [an] exercise of [our] discretionary power to facilitate the sending of notice to potential class members, and is neither necessary nor sufficient for the existence of a representative action under the [Act]."[10]

Mr. Wright makes a "modest factual showing" other tipped employees are "similarly situated" because La Buca failed to give notice to its tipped employees it utilized the tip credit to satisfy the Act's minimum wage requirement. Mr. Wright adduced evidence La Buca had the same tip credit policies and procedures for tipped employees. At this stage and absent opposition, Mr. Wright meets our lenient standard for conditional certification.

**III.    We decline to certify a class for Mr. Wright's Pennsylvania wage claims.**

Mr. Wright moves to certify a class of all former and current tipped employees who worked for La Buca from May 25, 2015 through the present. Mr. Wright stridently argues class treatment is common for employee wage cases, particularly involving the minimum wage claim.

But just because a wage case involves several similar claims brought by persons in similar jobs does not automatically require a class action. Class treatment of claims is the exception to "the usual rule" requiring cases (even wage cases) to be brought and pursued by the individuals bringing the case.[11] When reviewing class certification, we identify the "common interests" of the possible class members and evaluate Mr. Wright's and his counsels' "ability to fairly and adequately protect class interests" under Fed. R. Civ. P. 23.[12] Rule 23(a) requires: (1) numerosity: meaning the class "must be so numerous that joinder of all members is

4

impracticable"; (2) commonality: meaning there are "questions of law or fact common to the class"; (3) typicality: meaning the "claims or defenses of the representative parties" must be "typical of the claims or defenses of the class"; and, (4) adequacy of representation: meaning the named plaintiff and counsel will "fairly and adequately protect the interests of the class."[13] We then turn to Rule 23(b)(3) which requires "(1) common questions of law or fact predominate (predominance); and, (2) the class action is the superior method for adjudication (superiority)."[14]

Given class treatment is the exception, we may not certify a class without finding Mr. Wright has satisfied, by a preponderance of the evidence, each of the Rule 23 requirements.[15] "The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence."[16] Mr. Wright must show "[a]ctual, not presumed[,] conformance" with the Rule 23 requirements.[17] To determine whether there is actual conformance, we must conduct a "rigorous analysis" of the evidence and proffered arguments.[18] We must also "resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action."[19] We cannot certify a class because Mr. Wright "promises the class will be able to fulfill Rule 23's requirements, with the caveat that the class can always be decertified if it later proves wanting."[20]

Defendants do not challenge class certification except as to its first requirement: they argue the twenty or twenty-two La Buca employees who presumably live in this area can be joined into this case (as they are already invited to do under the Act) where the Act counsel will represent them and judicial economy will not be aided by class treatment. We rigorously analyzed the post-discovery detailed fact record and find Mr. Wright fails to establish the

5

propriety of certifying a class of employees with Pennsylvania state law wage claims by a preponderance of the evidence.[21]

## A. The proposed class does not presently satisfy the impracticability of joinder requirement.

Mr. Wright's threshold burden is to show, by a preponderance of the evidence, we cannot practically manage this case if the twenty or twenty-two presently non-party employees file a joinder complaint. Our Court of Appeals instructs "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."[22] While the number of plaintiffs is not dispositive, courts generally find joinder of over forty claimants is impracticable and joinder of twenty or less can be efficiently managed. In our present range of twenty to twenty-two employees, our Court of Appeals recently directed we must engage in a particularly rigorous factual analysis to meet our obligation to ensure joinder is impracticable before allowing a class to proceed.

In the *In re Modafinil Antitrust Litigation*[23] decision, our Court of Appeals established a framework for deciding Rule 23(a)(1) numerosity questions. Rule 23(a)(1) requires a putative class to be "so numerous that joinder of all members is impracticable."[24] In *Modafinil*, our Court of Appeals reversed the district court's class certification of a group of twenty-two companies seeking multi-million dollar damages. The court directed us to begin this rigorous analysis by considering the overall size of the class, and then consider a "non-exhaustive" list of factors relevant to impracticability, including "judicial economy, the claimants' ability and motivation to litigate as joined plaintiffs, the financial resources of class members, the geographic dispersion of class members, the ability to identify future claimants, and whether the claims are for injunctive relief or for damages."[25]

6

The parties offer us a variety of authority; very little of their cited authority involves the trial of wage claims under the Act and one state's wage laws brought by less than forty known persons. In our Circuit, a district court in *Bland v. PNC Bank* recently certified subclasses of less than forty persons (part of much larger classes) seeking wages under the Act and several differing state minimum wage laws.[26] In *Bland*, the subclasses comprised part of a national class which easily met the impracticability standard. The court found the claims could be classified as small and the class members' ability to pursue separate state statutory wage claims discouraged joinder given the costs. The court never addressed the fact the same members would need to opt-in to the Act claims and, if so, counsel would represent them in the suit. The court presumed these members pursuing joinder would need to hire new counsel.

In a settlement context, Judge Leeson recently approved a settlement of claims under the Act and the wage laws of six states, including Pennsylvania.[27] In *Tompkins v. Farmers Insurance Exchange*, Judge Leeson found impracticability of joinder of state wage law subclasses of less than forty members when the maximum average value of the claims is $5,586.00 which rendered it unlikely individual class members would have the ability or motivation to join their state law claims to the overall case, compounded by the relatively limited financial resources held by the insurance adjuster class members and the class members lived in eleven different zip codes. Again, while the court knew the specific average loss for each class member, it did not address whether joinder is impracticable when the same claimants need to join to obtain the benefits of the Act.

These two reasoned decisions also arise with smaller subclasses when the court is already facing a qualified larger class. In the subclass context, we readily understand the judicial economy in bringing all class claims together in one suit. Outside of the federal and state

7

statutory mandates for wages, we can appreciate courts certifying a class after finding impracticability of joinder for less than forty members when challenging a single issue such as an insurer's coverage decision and no single counsel may already be obligated to represent the claimants as would be true for opt-in employees under the Act.[28]

As with Judge Leeson, our colleague Judge Schiller approved a class settlement under the Act and the Pennsylvania minimum wage law.[29] The court found a twenty-seven member class satisfied numerosity, noting the class members were suing for a "relatively small sum."[30] Like Judge Leeson, the court did not address impracticability when the same claimants need to join to obtain the benefits of the Act. While we must consider impracticability under Rule 23 for a settlement class, the reality of a settlement is joinder is much easier in a settlement where we are not encountering a variety of lawyers, state laws, and docket management issues common to a trial or motion practice with widely differing interests.

We are informed by two recent opinions from Judges Joyner and Goldberg in our District highlighting concerns raised by Mr. Wright's motion with a notable lack of supporting evidence. In *Malvern Institute for Psychiatric and Alcoholic Studies, Inc. v. Magellen Healthcare, Inc.*, Judge Joyner denied certification for twenty-seven medical providers finding joinder practicable when all proposed class members are located in Southeastern Pennsylvania, the identification of claimants is a relatively simple process, and if they wanted to join the case as it proceeded in merits discovery, "they would find it fairly easy to do so." [31] Judge Joyner found the plaintiff had not shown prejudice to any potential claimant in future proceedings or a serious administrative burden or barrier to joinder in lieu of the exceptional grant of certification.[32]

In *King Drug Company of Florence, Inc. v. Cephalon, Inc.*, our colleague Judge Goldberg thoughtfully denied certification for a group of twenty-four or twenty-five companies

8

after rigorously analyzing the facts on remand from the Court of Appeals' *Modafinil* opinion.[33] Addressing each of the *Modafinil* non-exhaustive factors, Judge Goldberg found the plaintiffs' lawyers had, or could, coordinate jointly retained experts and join motions filed by the lawyers for the lead plaintiffs and the court could manage discovery under Fed. R. Civ. P. 26(b)(2)(C)(i). The court then found the individual plaintiffs "have both the ability and motivation to litigate via joinder" since the lead plaintiff's counsel would continue to represent the same parties on a contingent basis and the "small" claims would still be motivated, class members would share in costs, and the class members did not show they lacked the ability or motivation to join by affidavit or otherwise.[34] The court then found the plaintiff companies possessed the financial resources to join the case which disfavored certification but they were geographically dispersed among thirteen states and Puerto Rico slightly favoring certification. The plaintiffs did not seek injunctive relief further leading Judge Goldberg to find joinder is practicable in a damages only case. On balance, Judge Goldberg denied certification.

We also examined many cases outside of our Circuit. One case stood out. In *Bartleson v. Winnebago Industries, Inc.*, an employee bringing a claim under the Act sought to amend to bring an Iowa wage claim for a class of over five hundred co-workers, including twenty-one who had already opted-in to the federal Act claim.[35] The court first addressed whether the representative employee could amend to add a state law claim under the court's supplemental jurisdiction. The employer objected arguing, among other reasons, the state law wage claims for over 500 members would then substantially predominate over the federal Act claim with twenty-one members. Chief Judge Bennett examined a court of appeals' opinion in *Fielder v. Credit Acceptance Corp.*[36] and found supplemental jurisdiction extended only so far as the persons who already have federal question claims under the Act.[37] After allowing amendment under the

9

court's supplemental jurisdiction for only those employees who already opted into the federal law claim, Chief Judge Bennett in the Northern District of Iowa denied class certification of the twenty-one employees who – having already opted into the Act collective – now sought class treatment for claims under Iowa wage law. Chief Judge Bennett found "… joinder is not only practicable, but has in essence already been accomplished, as only the twenty-one members of the [Act] 'opt-in' class could possibly be members of the Rule 23 class on the [Iowa wage] claim, in light of the limitations on the court's supplemental jurisdiction."[38]

We face a similar issue at this stage. At most under our current facts, we will have twenty-two employees opting-in to Mr. Wright's federal question claim under the Act. Unlike *Bartleson*, the parties seemingly admit we will not have over forty possible Pennsylvania wage claims. As in *Bartleson,* the opt-in process under the Act will accomplish the joinder with considerable ease under one notice. Any person opting-in to Mr. Wright's federal claim could also join the Pennsylvania wage claim upon notice and contact with Mr. Wright's counsel.

The wide variety of other cases outside this Circuit and not involving the interplay between the Act and state wage acts does not greatly assist our analysis. The Court of Appeals for the Ninth Circuit affirmed certification of a twenty-member class alleging defendant violated the Credit Repair Organizations Act.[39] Noting the twenty-member class would be a "jurisprudential rarity," the court of appeals found the district court did not abuse its discretion in denying the defendant's motion to de-certify the class.[40] The district court initially certified the class with seventy-four potential members.[41] After the notice period, the parties reached a settlement in which the defendant agreed to pay $600 to each of the twenty class members who did not opt out of the class.[42] The defendant appealed, arguing the district court should have de-certified the class since twenty members failed numerosity.[43] The Court of Appeals noted the

10

district court properly found de-certification would be "inefficient," as it would potentially clog the court's docket with separate lawsuits.[44] Considering the parties settled for $600 per class member, the court noted class members would not be motivated to join the lawsuit for such a small award.[45] The court also noted de-certification could confuse class members who were already notified of the settlement.[46] Unlike our case, the court faced a potential class of more than forty members when it certified the class and addressed the issues in a settlement context. The plaintiff also provided the court with definitive damages as the class members all paid the same price for the defendant's deficient services.

The Court of Appeals for the Eighth Circuit affirmed certification of a class of twenty black teachers in 1971 who suffered discrimination in an Arkansas school district.[47] Without a particularly "rigorous analysis" on numerosity, the court noted "unless abuse is shown, the trial court's decision on this issue is final."[48] The court noted some of the teachers no longer taught in the school district, but did not question whether the teachers had left the area as to make joinder impracticable.[49]

The Court of Appeals for the Fourth Circuit in 1967 found a class of eighteen black physicians in a Virginia community satisfied the numerosity requirement in a class action challenging discriminatory practices at a Virginia hospital.[50] The court found eighteen members sufficient "in the existing circumstances."[51] The court noted other black physicians who were not members of the community due to discrimination could potentially join the class. Unlike our situation in which Mr. Wright has presented a maximum of twenty-two potential class members, the court dealt with a potentially larger class beyond what the plaintiff presented for class certification.

11

A district court in Iowa in 2001 certified a seventeen-member class of employees suing their employer over a benefit plan.[52] The court found because the defendant still employed almost all of the proposed class members, they could "suffer the fear recognized in suing one's employer."[53] The court also found it significant the class sought only injunctive and declaratory relief.[54] Unlike *Bublitz*, the majority of proposed class members in Mr. Wright's case no longer work for La Buca and Mr. Wright does not seek injunctive relief.

In 1999, a district court in Missouri certified a class of potentially twenty to sixty-five retired employees suing their former employer for breach of fiduciary duty in managing a benefit plan.[55] Although all potential class members lived in Missouri, the court found close proximity "does not defeat certification."[56] The court explained the possibility of as many as sixty-five separate trials would "waste" judicial resources.[57] The court focused solely on judicial economy in finding numerosity satisfied but did not deal with a situation like ours, where the same potential class members must join to obtain benefits under the federal law.

In the Northern District of Illinois, a class of twenty Hispanic correctional officers in 1983 sued a county.[58] The plaintiffs sought only injunctive and declaratory relief.[59] The court certified the class, noting the nature of relief requested "weighs in favor of a finding of impracticability."[60] The court also noted the administrative difficulty "in requiring each of twenty potential plaintiffs to exhaust administrative procedures, then to intervene, join, or initiate a separate suit."[61] Again, Mr. Wright seeks damages not injunctive relief.

In the Western District of New York in 2011, the court certified a class of sixteen members in a wage case under the Act and the New York Labor Law after the parties had agreed to a settlement and neither party opposed class certification.[62] Noting the settlement provided class members with small sums, the court explained the "small recoveries that many of the class

members could reasonably expect to recover even if they prevailed on the merits makes it unlikely that, absent the benefit of class representation, they would choose to bear the costs of individual lawsuits."[63] Again, certifying a small class for settlement poses substantially easier proofs.

After reviewing the extensive caselaw particularly the guidance in our Circuit and the more current cases, we now engage in a rigorous factual analysis of whether joinder of the twenty or twenty-two La Buca employees is impracticable under the series of non-exhaustive factors defined by our Court of Appeals in *Modafinil.[64]*

### 1. Maximum size of the class on the present record.

The potential size of Mr. Wright's putative class is not evident. Mr. Giuliani estimated La Buca employed about fifteen tipped employees since 2015.[65] Mr. Wright argues his class contains at least twenty-one members because Mr. Giuliani counted twenty-two tipped employees from a list of La Buca employees from 2015 until his deposition.[66] The list, however, shows only twenty employees received payment per shift.[67] The list then displays salaried employees, before displaying two final employees without designating their type of pay.[68]

Although the list of employees appears to indicate the putative class consists of only twenty members, we do not find the class's size dispositive of the numerosity question for three reasons. First, the size of the class is only a "starting point," and our Court of Appeals has directed us to perform "particularly rigorous" inquiries into whether joinder is impracticable when putative classes consist of fewer than forty members. Second, as described above, other courts have found classes of twenty members or fewer sufficient to meet the impracticability requirement, albeit infrequently and in other contexts. Finally, because the end of the list does

13

not designate the type of pay of two employees, it is possible Mr. Wright's proposed class consists of twenty-two members. We will evaluate whether joinder is impracticable.

## 2. Judicial economy does not favor class treatment over joinder.

Judicial economy is one of two paramount factors in deciding whether joinder is impracticable. This factor "looks to the administrative burden that multiple or aggregate claims place upon the courts" including "any efficiency considerations regarding the joinder of all interested parties that the district court deems relevant, including the number of parties and the nature of the action" as well as "docket control." [69] Our Court of Appeals directs our focus on whether "the class action mechanism is **substantially** more efficient than joinder of all parties."[70]

Given a possible maximum class of twenty-two employees, we can manage the common claims. All twenty-two could opt into the Act claim in which case we will face twenty-two damages decisions. As we already granted Mr. Wright summary judgment on the Act claim (outside of willfulness), our common trial involves issues of La Buca's willfulness and damages. The Pennsylvania claims easily correlate to these proofs. If La Buca did not pay the minimum wage and failed to pay under the Wage Payment and Collection Law, we will also be facing damages. Those damages may be for a year longer if Mr. Wright can prove willfulness. But the jury would still need to decide two or three years of damages depending on its willfulness finding. La Buca does not dispute the common issue; we will focus on La Buca's conduct and then calculate damages.

The same limited group of employees will be represented by experienced employee advocates who will expect payment under the Act from the resolution. As in *King Drug,* Mr. Wright's counsel is presently proceeding on a contingency basis in the sense he must succeed on the federal Act claim by trial or settlement to recover fees.

14

Our docket and case management will be similar. With the collective, we will need to manage the claims of the opt-in persons. Those same persons can join the Pennsylvania wage claims. We may already be trying twenty or twenty-two federal wage claims. We can do this.[71]

While we expect judicial economy would initially and usually favor class treatment, we cannot find so in this context with state law wage claims for a maximum of twenty-two workers. The class action mechanism is not substantially more efficient. We could face a different decision if La Buca's production of a comprehensive list of employees under today's Order expands this class. But we are not there today.

The first paramount factor of judicial economy at this stage slightly favors joinder over class treatment.

### 3. We lack evidence on the ability and motivation of employees to join this suit, including financial resources.

The second paramount factor is the ability and motivation of the employees receiving the Act notice to agree to also join in Mr. Wright's similar Pennsylvania wage claims. One purpose of the numerosity requirement is "to further the broader class action goal of providing those with small claims reasonable access to a judicial forum for the resolution of those claims."[72] Analysis of this second factor "involves an examination of the stakes at issue for the individual claims and the complexity of the litigation, which will typically correlate with the costs of pursuing these claims."[73]

Mr. Wright fails to provide evidence of the potential stakes for the individual claims. While we note La Buca failed to keep written records during the period in question, Mr. Wright fails to provide us with evidence showing what other current and former tipped employees would expect in damages. Without such information, we cannot analyze whether these employees would be motivated to join the suit. But federal law already requires them to opt-into the Act

15

claim. If they are motivated to join the Act claim, and absent contrary evidence, we would expect they would join Mr. Wright's Pennsylvania law claims.

We also note Mr. Wright fails to argue the amount of costs the employees would incur if they joined the lawsuit. For example, Mr. Wright fails to show these other potential class members would need to retain separate counsel to bring their claims if joined. Why would they? Mr. Wright's Act counsel is already representing these persons on the Act claim. The same persons could opt-in to the federal and Pennsylvania claims. Mr. Wright also fails to provide any evidence of the potential class members' financial resources. As in *King Drug,* absent evidence, we cannot assume the employees would not join in a case where the lawyers are already agreeing to be paid only if they win the federal claim.

This second paramount factor tips slightly in favor of joinder although Mr. Wright may be able to adduce evidence of a lack of motivation based on the number of opt-in employees under the Act. Assuming he can then address the supplemental jurisdiction questions raised by Chief Judge Bennett in *Bartleson*, he may later renew his certification request.

### 4. We do not need to identify future claimants.

Both parties confirm a maximum of twenty-two employees. La Buca has stopped its policy. There are no future claimants. Today's Order requires La Buca identify all potential tipped employees but the parties agree the maximum of employees is twenty-two.

This factor strongly favors joinder over class treatment.

### 5. We do not know the geographic dispersion of the co-employees.

Mr. Wright has not shown the location of the co-employees. We know seven still work in Philadelphia. Mr. Wright has not met his burden to show a geographic dispersion which

16

would favor class treatment. With the present state of the evidence, this factor favors joinder over class treatment.

### 6. We are not aware of the size of individual claims.

Mr. Wright offers no evidence of the size of the individual claims. As wage claims, we could expect them to be relatively smaller in size. We expect they are not in the range of *King Drug* damages models. But some co-employees worked at La Buca for a couple years or more. This is all guesswork. We have no evidence today.

We allow Mr. Wright to adduce evidence on this issue and if warranted again request certification depending on the practical factors at a later stage.    At this stage, the absence of evidence requires we favor joinder over the exception of class treatment.

### 7. Mr. Wright seeks only damages.

The parties admit La Buca stopped the alleged wage conduct. Mr. Wright does not seek injunctive relief. His claims will not help La Buca employees in the future. This factor favors joinder over class treatment.

## B. We will allow Mr. Wright to move for certification with a sufficient record.

As he fails to satisfy the first requirement for certifying a class, Mr. Wright has not met his burden of showing, by a preponderance of the evidence, we should grant the extraordinary class treatment of the Pennsylvania wage claims for these known twenty or twenty-two La Buca employees. We cannot satisfy the rigorous factual analysis required in *Modafinil* based on assumptions and then add a caveat we can later de-certify. All certifications are conditional but and will not certify with a wait-and-see approach on the condition of finding evidence.[74]  We will permit Mr. Wright to move again for class certification should he obtain more support for a finding impracticability when we may already be trying several individual claims under the Act.

17

## IV. Conclusion

We grant Mr. Wright's motion for a conditional collective under the Fair Labor Standards Act but deny his present request to certify a class of twenty or twenty-two La Buca co-employees under the Pennsylvania wage laws. Mr. Wright may move forward on his individual claims, notice the collective action and allow his co-employees to timely seek joinder of their Pennsylvania wage claims in a joinder complaint. He can also timely renew his motion for certification if he adduces more evidence supporting this exceptional treatment.

---

[1] ECF Doc. No. 32, App.101a.

[2] ECF Doc. No. 34-2, p. 2.

[3] *Id.*

[4] ECF Doc. No. 35, p. 2.

[5] *Id.* at p. 3.

[6] ECF Doc. No. 34-1.

[7] *See Boyington v. Percheron Field Services, LLC*, No. 14-90, 2015 WL 3756330 at *1 (W.D. Pa. June 16, 2015) (internal citations omitted).

[8] *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012).

[9] *Boyington*, 2015 WL 3756330 at *1 (quoting *Zavala*, 691 F.3d at 536 n. 4 and *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011)).

[10] *Id.* (citing *Symczyk*, 656 F.3d at 194).

[11] *In re: Modafinil Antitrust Litig.*, 837 F.3d 238, 248 (3d Cir. 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)). Mr. Wright's strident reliance on a series of class certification orders in wage cases ignores the significant number of employees at issue in those wage cases. *See e.g.*, *Velez v. 111 Atlas Rest. Corp.*, No. 14-6956, 2016 WL 9307471 (E.D.N.Y. Aug. 11, 2016) (115 employees). We face a limited universe of known claimants.

[12] *In re Community Bank of Northern Virginia*, 622 F.3d 275, 291 (3d Cir. 2010) (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tanks Prods. Liab. Litig.*, 55 F.3d 768, 799 (3d Cir. 1995)).

[13] *Id.*

[14] *Id.*

[15] *Modafinil*, 837 F.3d at 248-49.

[16] *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012).

[17] *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).

[18] *Id.* at 591.

[19] *Id.*

[20] *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 358 (3d Cir. 2013) (explaining such conditional certification is not permitted under Rule 23).

[21] *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008) (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2nd Cir. 2008)).

[22] *Martz v PNC Bank, N.A.*, No. 06-1075, 2007 WL 2343800, at *2 (W.D. Pa. Aug. 15, 2007) (citing *Stewart v. Abraham*, 275 F.3d 220, 226 (3d Cir. 2001)).

[23] 837 F.3d 238 (3d Cir. 2016).

[24] Fed. R. Civ. P. 23(a)(1).

[25] *In re Modafinil Antitrust Litig.*, 837 F.3d at 253.

[26] *Bland v. PNC Bank*, Nos. 15-1042, 15-1700, 2016 WL 10520047 (W.D. Pa. Dec. 16, 2016) (approved subclasses consisting of thirty-nine, thirty-six, and twenty-seven members each).

[27] *Tompkins v. Farmers Insurance Exchange*, No. 14-3737, 2017 WL 4284114 (E.D. Pa. Sept. 27, 2017).

[28] *Wilson v. Anthem Health Plans of Kentucky, Inc.*, No. 14-743, 2017 WL 56064, at * 6 (W.D. Ky. Jan. 4, 2017) (joinder of twenty-seven parties challenging an insurer's coverage decision into a single lawsuit would "present several administrative complexities for the Court, rendering it highly impracticable to hold telephonic conferences, manage the electronic docket, and make scheduling decisions to the satisfaction of all parties.").

[29] *Young v. Tri Cty. Sec. Agency, Inc.*, No. 13-5971, 2014 WL 1806881 (E.D. Pa. May 7, 2014).

[30] *Young*, 2014 WL 1806881, at \*2.

[31] No. 16-4772, 2018 WL 3831397, at \*4-5 (E.D. Pa. Aug. 8, 2018).

[32] *Id.* at \*5.

[33] No. 06-1797, 2017 WL 3705715 (E.D. Pa. Aug. 28, 2017).

[34] *Id.* at \*10.

[35] *Bartleson v. Winnebago Indus., Inc.*, 219 F.R.D. 629, 633 (N.D. Iowa 2003).

[36] 188 F.3d 1031 (8th Cir. 1999).

[37] Chief Judge Bennett's analysis on supplemental jurisdiction is limited as our Court of Appeals does not follow the *Fielder* analysis when facing federal questions and supplemental state law class claims. We focus on a variety of factors in this Circuit in a case specific analysis. *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 312 (3d Cir. 2003).

[38] *Bartleson*, 219 F.R.D. at 639.

[39] *Rannis v. Recchia*, 380 F. App'x 646, 648 (9th Cir. 2010) (finding the district court did not abuse its discretion in certifying a twenty-member class).

[40] *Id.* at 651.

[41] *Id.* at 648.

[42] *Id.*

[43] The parties reserved the defendant's right to appeal in the settlement agreement. *Id.*

[44] *Id.* at 651.

[45] *Id.*

[46] *Id.*

[47] *Arkansas Ed. Ass'n v. Bd. of Ed. of Portland, Ark. Sch. Dist.*, 446 F.2d 763, 765 (8th Cir. 1971).

[48] *Id.*

[49] *Id.*

[50] *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648 (4th Cir. 1967).

[51] *Id.* at 653.

[52] *Bublitz v. E.I. du Pont de Nemours & Co.*, 202 F.R.D. 251, 256 (S.D. Iowa 2001).

[53] *Id.*

[54] *Id.* ("[T]he numerosity requirement is relaxed where the class seeks injunctive and declaratory relief.").

[55] *Bradford v. AGCO Corp.*, 187 F.R.D. 600, 604 (W.D. Mo. 1999).

[56] *Id.*

[57] *Id.* ("If the same witness traveled to the same courthouse to testify about the same retirement benefits in multiple cases, then judicial resources would be wasted.").

[58] *Rosario v. Cook Cty.*, 101 F.R.D. 659, 660 (N.D. Ill. 1983).

[59] *Id.*

[60] *Id.* at 661.

[61] *Id.* at 662.

[62] *Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 407 (W.D.N.Y. 2011).

[63] *Id.*

[64] The remaining authority in which the court certified a class of less than forty members contains such sparse analysis we do not find separate discussion of these cases warranted. *Grant v. Sullivan,* 131 F.R.D. 436, 446 (M.D. Pa. 1990) ("This Court may certify a class even if it is composed of as few as 14 members."); *Manning v. Princeton Consumer Discount Co., Inc.*, 390 F. Supp. 320, 324 (E.D. Pa. 1975) (certifying a fifteen-member class); *Philadelphia Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452, 463 (E.D. Pa. 1968) ("While 25 is a small number compared to the size of the other classes being considered, it is a large number when compared to a single unit. I see no necessity for encumbering the judicial process with 25 lawsuits, if one will do.").

[65] ECF Doc. No. 32, N.T. Giuliani at 25:15–17.

[66] ECF Doc. No. 32, N.T. Giuliani at 71:3–7.

[67] ECF Doc. No. 34-2.

[68] *Id.*

[69] *Modafinil*, 837 F.3d at 254, 257.

[70] *Id.* at 254 (emphasis added).

[71] For example, we recently tried fifteen employees' Fair Labor Standards Act claims without undue delay or prejudice. *Mozingo v. Oil States Energy Services, L.L.C.*, No. 15-529 (W.D. Pa.). We are also managing a joinder complaint filed by over 450 insurance agent employees including now resolving the issues involving the last three plaintiffs. *Romero v. Allstate Insurance Company, et.al*, No. 01-3894 (E.D. Pa.) (joinder complaint filed in 2015).

[72] *Modafinil*, 837 F.3d at 257.

[73] *Id.*

[74] *Hayes*, 725 F.3d at 358.